Frank M. Liberatore (SBN 119976)
Henry L. Sanchez (SBN 176878)
Sarine Chitilian (SBN 205595)
JACKSON LEWIS LLP
725 S. Figueroa Street, Suite 2500
Los Angeles, California 90017-5408
Telephone: (213) 689-0404
Facsimile: (213) 689-0430

Attorneys for Defendant
LEXMARK INTERNATIONAL, INC.

FILED

2008 JUL 22 PM 2: 16

CENTRAL DIST OF CALIF
LOS ANGELES

BY _____

# THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

AHM
FMOx

| | |
|---|---|
| RON MOLINA, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br> vs.<br><br>LEXMARK INTERNATIONAL, INC., a corporation, and DOES One through Twenty-Five, Inclusive,<br><br>    Defendants. | CASE NO.: **CV08-04796**<br><br>**NOTICE OF REMOVAL OF CIVIL ACTION TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. SECTIONS 1332, 1441 AND 1446 [DIVERSITY]**<br><br>COMLAINT FILED: August 31, 2005<br>FAC FILED:    October 2, 2006 |

TO THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, PLAINTIFF RON MOLINA, THE CLASS HE REPRESENTS AND TO HIS ATTORNEYS OF RECORD:

  PLEASE TAKE NOTICE that Defendant Lexmark International, Inc. ("Lexmark") hereby removes this action from the Superior Court of the State of California for the County of Los Angeles to the United States District Court for the Central District of California, pursuant to 28 U.S.C. Sections 1332 (as amended by the Class Action Fairness Act of 2005, Pub. L. 109-2, § 4(a) ("CAFA") and 1441(a) and (b), for the following reasons:

COPY

1.   On August 31, 2005, Plaintiff Ron Molina ("Plaintiff") filed his putative class action complaint in the Superior Court of the State of California, County of Los Angeles, entitled: *"Ron Molina, individually, and on behalf of all others similarly situated, Plaintiff v. Lexmark International, Inc. a corporation, and Does One through Twenty-Five, inclusive, Defendants,"* designated as Case No. BC 339117 ("Complaint"). The Complaint alleged the following purported causes of action against Lexmark International, Inc. ("Lexmark") and Does 1 through 25: (1) Unpaid Wages-Accrued Vacation Pay (Labor Code Section 200 *et seq.*); (2) Unpaid Wages-Accrued Vacation Pay Due Upon Termination (Labor Code Sections 201-04; 210 & 227.3); (3) Violations of the Unfair Competition Act (Bus. & Prof. Code Sections 17200-17208); (4) Unpaid Wages- Commissions; (5) Injunctive Relief; (6) Reasonable Attorneys' Fees and Costs. Plaintiff's Complaint did not specify an amount in controversy.

2.   A copy of the Summons and Complaint was served on Lexmark by delivery to its agent for service of process on September 6, 2005. *See* Declaration of Paula Anderson ¶ 3 ("Anderson Decl.") and Proof of Service of Summons, dated September 20, 2005, attached hereto as Exhibit "1."

3.   On October 6, 2005, Lexmark filed and served its Answer to Plaintiff Ron Molina's Unverified Complaint.

4.   On October 20, 2006, Plaintiff filed his "Modified" [First] Amended Complaint in the Superior Court of the State of California, County of Los Angeles, entitled: *"Ron Molina, individually, and on behalf of all others similarly situated, Plaintiff v. Lexmark International, Inc. a corporation, and Does One through Twenty-Five, inclusive, Defendants,"* designated as Case No. BC 339117 ("First Amended Complaint"). The First Amended Complaint purports to allege the causes of action against Lexmark and Does 1 through 25 as follows: (1) Unpaid Wages-Accrued Vacation and Personal Choice Pay (Labor Code Section 200 *et seq.*); (2) Unpaid Wages-Accrued Vacation & Personal Choice Pay Due Upon Termination (Labor Code Section 201-04;

1   210 & 227.3); (3) Violations of the Unfair Competition Act (Bus. & Prof. Code Section
2   17200-17208); (4) Unpaid Wages-Commissions; (5) Injunctive Relief; (6) Reasonable
3   Attorneys' Fees and Costs.   The First Amended Complaint alleges virtually identical
4   claims as those in the Complaint, save for the addition of a claim for personal choice
5   days. Plaintiff's First Amended Complaint does not specify an amount in controversy.

6         5.     The Summons, Complaint and First Amended Complaint, Answer, as
7   well as all other pleadings, notices and orders, collectively attached Exhibits A-CCCCC
8   to the Compendium of Exhibits in Support of Notice of Removal, constitute all process,
9   pleadings and orders served on Lexmark in this action pursuant to 28 U.S.C. Section
10  1446(a). *See* Anderson Decl. ¶ 4.

11        6.     In accordance with 28 U.S.C. Section 1446(d), the undersigned
12  counsel certifies that a copy of this Notice of Removal and all supporting papers
13  promptly will be served on Plaintiff's counsel and filed with the Clerk of the Los Angeles
14  Superior Court. Therefore, all procedural requirements under 28 U.S.C. Section 1446
15  have been satisfied.

16        7.     Venue is proper in this District pursuant to 28 U.S.C. Section 1441(a)
17  because the Superior Court where the removed case was pending is located within this
18  District.

19        ## REMOVAL BASED ON DIVERSITY AND CLASS ACTION FAIRNESS ACT
20        ## OF 2005 (28 U.S.C. §§ 1332(a) and (d))

21        8.     The First Amended Complaint pleads a putative class action by which
22  Plaintiff sought to represent "[a]ll persons who are employed or have been employed by
23  Defendant in the State of California and:  a) Have not been paid the full amount of
24  accrued vacation pay and/or; b) Have not been permitted to carryover accrued vacation
25  from one calendar year to another and/or; c) Have not been paid accrued vacation pay at
26  the time they left Defendant's employ, and/or; d)   Have not been paid the full amount of

27
28

1   personal choice pay, and/or; e) have not been paid accrued personal choice pay at the
2   time they left Defendant's employ." *See* First Amended Complaint ¶ 16.

3           9.    Plaintiff's First Amended Complaint estimates that the class is
4   comprised of "at least 100 persons" employed by Lexmark in California. *See* First
5   Amended Complaint ¶ 17(a). The total number of current and former persons employed
6   by Lexmark in California from 1991 to the present is 181. *See* Anderson Decl. ¶ 5.

7           10.   Lexmark   properly may remove the Complaint on the basis of
8   diversity of citizenship jurisdiction pursuant to 28 U.S.C. Section 1332(a) or 28 U.S.C
9   Section 1332(d)(2), because:

10          a.    Plaintiff Ron Molina now is, and was at the time this action was
11  commenced, a citizen of the State of California within the meaning of 28 U.S.C. Section
12  1332(a). *See* First Amended Complaint ¶ 4.

13          b.    Lexmark now is, and was at the time this action was
14  commenced, a citizen of both the State of Delaware and the Commonwealth of Kentucky
15  within the meaning of Section 1332(c)(1), because it now is and was at all times
16  incorporated under the laws of the State of Delaware and maintains, and at all material
17  times maintained, its principal place of business in the Commonwealth of Kentucky. *See*
18  Anderson Decl. ¶ 6.

19          c.    Lexmark maintains its corporate headquarters at 740 W. New
20  Circle Rd. Lexington, KY 40511.  All of its corporate officers work out of its office in
21  Kentucky.  None of the company's officers reside or are domiciled in California.  All of
22  Lexmark's primary executive and administrative functions are conducted in the State of
23  Kentucky. *See* Anderson Decl. ¶ 7.

24
25          d.    Plaintiff was employed by Lexmark in El Segundo, California.
    At the time this action was commenced, Lexmark employed 47 employees in California.
26  As of June 30, 2008, Lexmark employs only 43 employees in California of the
27  approximately 3,779 employees employed by Lexmark in the United States, or a little
28

1  more than 1% of its United States workforce.  Moreover, as of June 30, 2008, Lexmark

2  employs only 43 employees in California of the approximately 13,944 employees

3  employed by Lexmark worldwide, or approximately .03% of its workforce.    In 2006, the

4  most current year for which Lexmark has complete financial data, Lexmark earned the

5  majority of its sales revenue in states outside of California, with the company's business

6  in California only accounting for approximately 6.09% of Lexmark's sales revenue in the

7  United States.  For the years 2004 and 2005, sales revenue in California have been 6.35%

8  and 5.15%, respectively.    There have been no changes in Lexmark's business for

9  Lexmark's sales revenues in California to materially have changed from approximately

10  6% in the year 2007 and year to date 2008.  Accordingly, Lexmark principal place of

11  business is not the State of California. *See* Anderson Decl. ¶ ¶ 8,9.

12          e.          The presence of doe defendants has no bearing on the diversity

13  with respect to removal.  *See* 28 U.S.C. §1441(a) ("For purposes of removal under this

14  Chapter, the citizenship of defendants used under a fictitious name shall be

15  disregarded.");

16      12.   Without admitting that Plaintiff or the class could recover any damages, the

17  amount in controversy in this action could exceed $5,000,000.00, exclusive of interest

18  and costs on the following grounds:

19          a.     Plaintiff's Complaint and First Amended Complaint do not specify an

20  amount in controversy.  On July 7, 2008, Plaintiff served on Lexmark a Summary of

21  Damages for the class prepared by Plaintiff's expert witness. This was the first time that

22  Lexmark became aware with any certainty that Plaintiff sought damages in excess of

23  $5,000,000.00.  Pursuant to Plaintiff's calculations, the amount of wages for accrued and

24  unused vacation, personal choice days and waiting time penalties is between $6,221,366

25  and $15,872,909. *See* Plaintiff's Summary of Damages attached hereto as Exhibit "2".

26          b.    Additionally, Plaintiff's First Amended Complaint seeks an unspecific

27  amount of compensatory damages, attorneys' fees, exemplary damages and injunctive

28

relief in connection with the causes of action set forth in his Complaint.  *See* First Amended Complaint ¶ 54 and Prayer for Relief.

       c.   This Notice of Removal has been filed within thirty (30) days after Defendant was first learned about the amount in controversy. This Notice of Removal is therefore filed within the time period provided by 28 U.S.C. § 1446(b).

13.   The Court may not decline to exercise jurisdiction over the action pursuant to 28 U.S.C. §§1332(d)(3), because Lexmark is not a citizen of the state in which the action was filed.  *See* Anderson Decl. ¶¶ 6-7.

WHEREFORE, Lexmark removes the above-entitled action now pending in the Superior Court of the State of California for the County of Los Angeles to this Court.

Respectfully submitted,

Dated: 7-21-08

JACKSON LEWIS LLP

By: _____
Frank M. Liberatore
Henry L. Sanchez
Sarine Chitilian

Attorneys for Defendants,
LEMARK INTERNATIONAL, INC.

**EXHIBIT 1**

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| antonio m lawson, 140823<br>LAWSON LAW OFFICES<br>160 FRANKLIN ST STE 204<br>OAKLAND, CA 94607-372<br>TELEPHONE NO.: (510) 419-0940<br>ATTORNEY FOR (Name): Plaintiff | **FILED**<br>LOS ANGELES SUPERIOR COURT<br><br>SEP 2 0 2005<br><br>JOHN A. CLARKE, CLERK<br>O. BROUSSARD<br>BY_____, DEPUTY |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF<br>Superior Court of Los Angeles County<br>600 S. Commonwealth Ave<br>Los Angeles, CA 90005 | |

| PLAINTIFF/PETITIONER: Ron Molina | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Lexmark International, Inc. | BC339177 |

| PROOF OF SERVICE OF SUMMONS | Ref. No. or File No.:<br>none |
|---|---|

1. At the time of service I was a citizen of the United States, at least 18 years of age and not a party to this action.

2. I served copies of: Complaint, Summons, Civil Case Cover Sheet, Civil Case Cover Addendum; ADR Information; Notice of Cas
   Assignment

3. a. Party served: Lexmark International, Inc.

   **BY FAX**

   b. Person Served: Margaret Wilson - Person authorized to accept service of process

4. Address where the party was served: 818 WEST SEVENTH STREET
   LOS ANGELES, CA 90017

5. I served the party
   a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to
   receive service of process for the party (1) on (date): September 6, 2005     (2) at (time): 3:35 pm

6. The "Notice to the Person Served" (on the summons) was completed as follows:
   c. on behalf of:

   Lexmark International, Inc.

   under:     CCP 416.10 (corporation)

7. **Person who served papers**
   a. Name:          Jimmy Lizama
   b. Address:       One Legal, Inc. - 132-Marin
                     504 Redwood Blvd #223
                     Novato, CA 94947
   c. Telephone number: 415-491-0606
   d. The fee for service was: $ 14.95
   e. I am:
      (3) registered California process server.
         (i) Employee or independent contractor.
         (ii) Registration No.: 4553
         (iii) County: LOS ANGELES

8. I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Date: September 20, 2005

Jimmy Lizama
(NAME OF PERSON WHO SERVED PAPERS)                                    (SIGNATURE)

| Form Adopted for Mandatory Use<br>Judicial Council of California POS-010<br>[Rev. July 1, 2004] | **PROOF OF SERVICE OF SUMMONS** | Code of Civil Procedure, § 417.10<br><br>FF# 6606965 |
|---|---|---|

7

**EXHIBIT  2**

## Chitilian, Sarine (L.A.)

| | |
|---|---|
| **From:** | Bonita D. Moore [bdm@birdmarella.com] |
| **Sent:** | Monday, July 07, 2008 3:40 PM |
| **To:** | Liberatore, Frank (O.C.); Chitilian, Sarine (L.A.); Sanchez, Henry L. (L.A.) |
| **Cc:** | Sheila Thomas |
| **Subject:** | FW: Molina v. Lexmark - Damage Calculations |
| **Attachments:** | 2008 07 07 Damage Estimates.xls |

Counsel:

Attached please find our expert's report regarding damage calculations.

Bonnie

**Bonita Dombey Moore**
Bird, Marella, Boxer, Wolpert,
 Nessim, Drooks & Lincenberg, P.C.
1875 Century Park East, 23rd floor
Los Angeles, CA  90067
ph:  310-201-2100 [x232]
fax: 310-201-2110
e-mail:  bdm@birdmarella.com
website:  www.birdmarella.com
Assistant: Beth Martin [x317]

PRIVILEGE AND CONFIDENTIALITY NOTICE
This message is for the sole use of the intended recipient(s) and may contain privileged or confidential information. Any unauthorized review, use, disclosure or
distribution is prohibited. If you are not the intended recipient, please advise the sender by reply email that you received this message in error.

8

July 7, 2008

Ron Molina, et al v. Lexmark International, Inc.
Summary of Damages - Forfeited Vacation Time

| | Pay Rate 1 (Using Gross Earnings Last/Current Year) | Pay Rate 2 (Using Gross Earnings Last Full Year Prior to Term) | Pay Rate 3 (Using Base Rate of Pay, Excludes Commissions, etc.) |
|---|---|---|---|
| Estimated Value of Vacation & Personal Time: | $10,539,043 | $9,066,389 | $6,269,992 |
| Interest (10% Simple): | $3,981,537 | $3,571,115 | $2,152,283 |
| Vacation Paid at Termination Offset: | ($161,447) | ($161,447) | ($161,447) |
| Vacation Payout at Termination Interest Offset: | ($64,372) | ($64,372) | ($64,372) |
| Waiting Time Penalties: | $1,578,149 | $1,424,015 | $972,707 |
| | | | |
| Total Damage (100% Forfeiture):[1] | $15,872,909 | $13,835,700 | $9,169,162 |
| Total Damage (80% Forfeiture):[1] | $12,968,793 | $11,308,199 | $7,484,707 |
| Total Damage (65% Forfeiture):[1] | $10,790,706 | $9,412,573 | $6,221,366 |

1. Excludes Vacation Paid at Termination.

9

July 7, 2008

Ron Molina, et al v. Lexmark International, Inc.

Notes

1. Waiting Time Penalties are calculated as 30 days wages at the employee's final daily rate of pay.

2. Pay Rate 1 is calculated using an employees gross earning in their last year of work.  For terminated employees, Exit (Severance) payments, payments for Outplacement services, the value of Exercised Stock Options, and Vacation Paid at Termination are subtracted from gross earnings  prior to calculating the regular rate of pay.  Regular Rate of Pay = (gross earnings) / (# of days worked in the year).  For employees who worked less that 60 days during their last year, the year prior to termination was used to calculate the Regular Rate of Pay.  Due to a short length of employment falling into two calendar years, Charles Hickman's (28406) entire employment spell was used to calculate his Regular Rate of Pay.

3. Pay Rate 2 is calculated using an employee's gross earning in their last full year of employment.  If an employee worked in only one calendar year, then the last year of employment is used in the calculations.  Charles Hickman's entire employment spell is used in his regular rate calculation.  Regular Rate of Pay 2 = (gross earnings) / (# of days worked).

4. Pay Rate 3 is calculated using an employees most recent base rate of pay (source: PeopleSoft data).   Regular Rate of Pay 3 = (annual base salary) / 260

5. Vacation and Personal Days Earned were calculated using vacation and personal day accrual information from Lexmark's Employee Handbook dated 1/01/05.  Lexmark employees earn 4 or 5 personal days a year depending on the holiday schedule.  The calculations assume 5 personal days a year are accrued.

6.The Last Day Worked field from the PeopleSoft data was used to determine current and former employees.  Five Employees terminated twice from the company between 1991 and the end of the data (October 10, 2007).  Both separations are included in the WTP calculations.  One employee terminated, returned and was still employed as of the end of the data (Bryan Monkarsh).

7. For employees with negative Vacation Paid at Termination amounts, all vacation earned during the year of termination was assumed to have been used.  Consequently, vacation earned in the terminating year was zeroed out for these individuals.  (Documents show the following deductions from final pay: Elaine Thomas-Perez -$664.33, Michelle Lee -$138.64, and David King -$532.04 ).  The underpayment of wages and interest, however, has not been included in the damage totals.

8. Damages are not calculated for John Howard Martin (ID: 6509)  for 2001-2004 and for Manny Washington 2006 since damages have been awarded in separate matters for these time periods.

9. Leave Of Absences are considered "inactive" spells and are not counted as time worked for vacation accruals or regular rate calculations (10 Associates, Source: LOA 6 18 08t.xls).

/0

July 7, 2008

Ron Molina, et al v. Lexmark International, Inc.
Damage Estimates
Using Pay Rate 1

| Year | Current Employees | | | | Former Employees | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Number of Employees with Potential Forfeitures | Earned Vacation Time | Earned Personal Time | Dollar Value of Accrued Vacation & Personal Time | Number of Employees with Potential Forfeitures | Earned Vacation Time | Earned Personal Time | Dollar Value of Accrued Vacation & Personal Time | Interest (10% Simple) |
| Pre 1991 | 2 | 520 | 140 | $431,123.82 | 9 | 2655 | 675 | $1,929,542.20 | $1,508,252.50 |
| 1991 | 2 | 45 | 10 | $34,167.96 | 10 | 202.5 | 48 | $164,426.74 | $120,872.96 |
| 1992 | 3 | 51 | 13 | $44,614.19 | 13 | 230.5 | 61 | $196,812.37 | $140,920.62 |
| 1993 | 3 | 55 | 15 | $51,578.34 | 13 | 245 | 65 | $210,201.75 | $151,020.61 |
| 1994 | 5 | 58.5 | 17 | $54,238.56 | 18 | 285.5 | 81 | $251,991.36 | $179,477.89 |
| 1995 | 6 | 90 | 30 | $88,479.66 | 23 | 310.5 | 100 | $279,330.09 | $187,700.43 |
| 1996 | 7 | 90 | 30 | $84,782.23 | 26 | 329.5 | 115 | $293,796.15 | $196,072.63 |
| 1997 | 11 | 143 | 54 | $129,853.76 | 40 | 460 | 180 | $382,864.56 | $249,179.59 |
| 1998 | 13 | 164 | 63 | $149,820.04 | 56 | 542 | 219 | $429,328.07 | $262,827.59 |
| 1999 | 17 | 199 | 79 | $178,677.34 | 81 | 676 | 279 | $479,134.09 | $277,893.27 |
| 2000 | 22 | 261 | 105 | $246,655.87 | 78 | 735.5 | 308 | $484,594.20 | $253,852.28 |
| 2001 | 23 | 282.5 | 114 | $265,892.00 | 66 | 642.5 | 263 | $394,276.29 | $191,119.30 |
| 2002 | 24 | 319 | 117 | $291,401.97 | 50 | 384 | 162 | $261,064.27 | $91,416.56 |
| 2003 | 25 | 326.5 | 117 | $292,595.73 | 38 | 392 | 152 | $279,485.33 | $84,168.13 |
| 2004 | 30 | 389.5 | 139 | $337,259.94 | 33 | 311 | 123 | $200,284.19 | $45,329.14 |
| 2005 | 34 | 466.5 | 162 | $400,905.34 | 24 | 225 | 86 | $150,095.54 | $25,697.32 |
| 2006 | 37 | 520.5 | 175 | $434,831.87 | 12 | 134 | 49 | $101,644.61 | $13,574.49 |
| 2007 | 43 | 636 | 209 | $508,517.73 | 6 | 31 | 9 | $24,774.86 | $2,161.68 |
| Total | | | | $4,025,396.36 | | | | $6,513,646.67 | $3,981,536.97 |

Waiting Time Penalties     $1,578,148.59

//

July 7, 2008

Ron Molina, et al v. Lexmark International, Inc.
Damage Estimates
Using Pay Rate 2

| Year | Current Employees | | | | Former Employees | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Number of Employees with Potential Forfeitures | Earned Vacation Time | Earned Personal Time | Dollar Value of Accrued Vacation & Personal Time | Number of Employees with Potential Forfeitures | Earned Vacation Time | Earned Personal Time | Dollar Value of Accrued Vacation & Personal Time | Interest (10% Simple) |
| Pre 1991 | 2 | 520 | 140 | $396,585.02 | 9 | 2655 | 675 | $1,698,717.80 | $1,391,217.00 |
| 1991 | 2 | 45 | 10 | $31,271.20 | 10 | 202.5 | 48 | $142,769.68 | $108,922.96 |
| 1992 | 3 | 51 | 13 | $37,024.15 | 13 | 230.5 | 61 | $175,715.58 | $129,793.56 |
| 1993 | 3 | 55 | 15 | $40,859.44 | 13 | 245 | 65 | $184,555.99 | $136,420.81 |
| 1994 | 5 | 58.5 | 17 | $43,131.37 | 18 | 285.5 | 81 | $207,309.29 | $152,286.22 |
| 1995 | 6 | 90 | 30 | $70,065.18 | 23 | 310.5 | 100 | $224,630.63 | $158,219.87 |
| 1996 | 7 | 90 | 30 | $64,848.35 | 26 | 329.5 | 115 | $243,822.53 | $169,993.18 |
| 1997 | 11 | 143 | 54 | $100,690.60 | 40 | 460 | 180 | $318,517.10 | $215,953.53 |
| 1998 | 13 | 164 | 63 | $117,025.62 | 56 | 542 | 219 | $363,484.44 | $227,067.37 |
| 1999 | 17 | 199 | 79 | $141,897.90 | 81 | 676 | 279 | $412,081.26 | $242,777.15 |
| 2000 | 22 | 261 | 105 | $200,829.15 | 78 | 735.5 | 308 | $423,610.00 | $222,935.41 |
| 2001 | 23 | 282.5 | 114 | $217,778.86 | 66 | 642.5 | 263 | $360,297.78 | $174,651.75 |
| 2002 | 24 | 319 | 117 | $238,947.92 | 50 | 384 | 162 | $233,389.18 | $80,148.41 |
| 2003 | 25 | 326.5 | 117 | $240,090.00 | 38 | 392 | 152 | $256,790.26 | $74,703.94 |
| 2004 | 30 | 389.5 | 139 | $281,385.46 | 33 | 311 | 123 | $195,799.37 | $43,444.71 |
| 2005 | 34 | 466.5 | 162 | $335,626.40 | 24 | 225 | 86 | $151,085.28 | $26,478.89 |
| 2006 | 37 | 520.5 | 175 | $364,248.90 | 12 | 134 | 49 | $101,771.51 | $14,385.98 |
| 2007 | 43 | 636 | 209 | $430,657.05 | 6 | 31 | 9 | $19,078.91 | $1,714.63 |
| Total | | | | $3,352,962.57 | | | | $5,713,426.59 | $3,571,115.37 |

Waiting Time Penalties                $1,424,015.21

12

July 7, 2008

Ron Molina, et al v. Lexmark International, Inc.
Damage Estimates
Using Pay Rate 3

| Year | Current Employees | | | | Former Employees | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Number of Employees with Potential Forfeitures | Earned Vacation Time | Earned Personal Time | Dollar Value of Accrued Vacation & Personal Time | Number of Employees with Potential Forfeitures | Earned Vacation Time | Earned Personal Time | Dollar Value of Accrued Vacation & Personal Time | Interest (10% Simple) |
| Pre 1991 | 2 | 520 | 140 | $348,649.71 | 9 | 2655 | 675 | $999,055.08 | $903,558.00 |
| 1991 | 2 | 45 | 10 | $28,062.32 | 10 | 202.5 | 48 | $76,753.23 | $64,289.19 |
| 1992 | 3 | 51 | 13 | $32,251.48 | 13 | 230.5 | 61 | $90,874.49 | $72,971.44 |
| 1993 | 3 | 55 | 15 | $35,044.25 | 13 | 245 | 65 | $94,995.96 | $76,054.40 |
| 1994 | 5 | 58.5 | 17 | $37,669.82 | 18 | 285.5 | 81 | $109,580.95 | $85,698.14 |
| 1995 | 6 | 90 | 30 | $56,914.65 | 23 | 310.5 | 100 | $120,929.61 | $87,027.96 |
| 1996 | 7 | 90 | 30 | $54,773.90 | 26 | 329.5 | 115 | $128,909.35 | $89,718.89 |
| 1997 | 11 | 143 | 54 | $88,660.67 | 40 | 460 | 180 | $167,986.98 | $110,728.11 |
| 1998 | 13 | 164 | 63 | $102,167.31 | 56 | 542 | 219 | $197,140.55 | $120,068.97 |
| 1999 | 17 | 199 | 79 | $125,345.16 | 81 | 676 | 279 | $234,898.74 | $135,413.47 |
| 2000 | 22 | 261 | 105 | $170,943.96 | 78 | 735.5 | 308 | $260,868.13 | $134,127.48 |
| 2001 | 23 | 282.5 | 114 | $187,858.24 | 66 | 642.5 | 263 | $231,616.52 | $109,497.28 |
| 2002 | 24 | 319 | 117 | $207,226.09 | 50 | 384 | 162 | $161,649.54 | $54,401.46 |
| 2003 | 25 | 326.5 | 117 | $239,509.25 | 38 | 392 | 152 | $175,268.99 | $49,273.86 |
| 2004 | 30 | 389.5 | 139 | $282,325.47 | 33 | 311 | 123 | $138,321.46 | $29,944.51 |
| 2005 | 34 | 466.5 | 162 | $308,301.07 | 24 | 225 | 86 | $107,677.34 | $17,920.55 |
| 2006 | 37 | 520.5 | 175 | $366,359.44 | 12 | 134 | 49 | $75,679.10 | $9,804.04 |
| 2007 | 43 | 636 | 209 | | 6 | 31 | 9 | $19,843.55 | $1,784.99 |
| Total | | | | $2,877,942.44 | | | | $3,392,049.58 | $2,152,282.73 |
| Waiting Time Penalties | | | | | | | | $972,706.82 | |

13

July 7, 2008

## Ron Molina, et al v. Lexmark International, Inc.
### Waiting Time Penalties - Former Employees
*(January 1, 1991 to October 10, 2007)*
#### Using Pay Rate 1

| Year | Number of Terminations | Average Daily Rate | Waiting Time Penalty |
|---|---|---|---|
| 1995 | 3 | $337.05 | $30,334.40 |
| 1996 | 2 | $758.32 | $45,499.01 |
| 1997 | 2 | $357.38 | $21,442.84 |
| 1998 | 10 | $353.99 | $106,196.86 |
| 1999 | 18 | $371.66 | $200,696.32 |
| 2000 | 16 | $206.57 | $99,153.62 |
| 2001 | 22 | $355.99 | $234,953.41 |
| 2002 | 22 | $306.50 | $202,289.65 |
| 2003 | 9 | $448.96 | $121,217.94 |
| 2004 | 12 | $585.66 | $210,837.80 |
| 2005 | 13 | $255.11 | $99,493.18 |
| 2006 | 6 | $618.08 | $111,254.86 |
| 2007 | 6 | $526.55 | $94,778.69 |
| **Overall** | **141** | **$373.08** | **$1,578,148.59** |

Notes:
1. Waiting time penalty is 30 days wages based on daily rate at the time of termination.
2. For individuals more than one termination, waiting time penalties are calculated for both separations using the employees most recent rate of pay.
3. Year refers to the year of termination.

14

Ron Molina, et al v. Lexmark International, Inc.
Waiting Time Penalties - Former Employees
*(January 1, 1991 to October 10, 2007)*
Using Pay Rate 2

| Year | Number of Terminations | Average Daily Rate | Waiting Time Penalty |
|---|---|---|---|
| 1995 | 3 | $230.35 | $20,731.60 |
| 1996 | 2 | $548.39 | $32,903.33 |
| 1997 | 2 | $375.13 | $22,507.86 |
| 1998 | 10 | $353.99 | $106,196.86 |
| 1999 | 18 | $304.18 | $164,258.59 |
| 2000 | 16 | $178.80 | $85,825.29 |
| 2001 | 22 | $330.21 | $217,936.65 |
| 2002 | 22 | $292.46 | $193,023.62 |
| 2003 | 9 | $393.62 | $106,277.06 |
| 2004 | 12 | $481.68 | $173,405.34 |
| 2005 | 13 | $227.30 | $88,645.28 |
| 2006 | 6 | $711.70 | $128,106.87 |
| 2007 | 6 | $467.76 | $84,196.86 |
| | | | |
| Overall | 141 | $336.65 | $1,424,015.21 |

**Notes:**
1. Waiting time penalty is 30 days wages based on daily rate at the time of termination.
2. For individuals more than one termination, waiting time penalties are calculated for both separations using the employees most recent rate of pay.
3. Year refers to the year of termination.

15

July 7, 2008

## Ron Molina, et al v. Lexmark International, Inc.
### Waiting Time Penalties - Former Employees
*(January 1, 1991 to October 10, 2007)*
Using Pay Rate 3

| Year | Number of Terminations | Average Daily Rate | Waiting Time Penalty |
|------|------------------------|--------------------|----------------------|
| 1995 | 3 | $191.74 | $17,257.02 |
| 1996 | 2 | $395.35 | $23,721.00 |
| 1997 | 2 | $332.62 | $19,956.90 |
| 1998 | 10 | $179.63 | $53,888.35 |
| 1999 | 18 | $207.55 | $112,079.53 |
| 2000 | 16 | $160.60 | $77,085.61 |
| 2001 | 22 | $191.78 | $126,574.77 |
| 2002 | 22 | $210.74 | $139,086.38 |
| 2003 | 9 | $261.90 | $70,711.83 |
| 2004 | 12 | $321.87 | $115,874.73 |
| 2005 | 13 | $182.07 | $71,005.99 |
| 2006 | 6 | $362.05 | $65,168.46 |
| 2007 | 6 | $446.09 | $80,296.23 |
| **Overall** | **141** | **$229.95** | **$972,706.82** |

**Notes:**
1. Waiting time penalty is 30 days wages based on daily rate at the time of termination.
2. For individuals more than one termination, waiting time penalties are calculated for both separations using the employees most recent rate of pay.
3. Year refers to the year of termination.

16